## UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| HOME DEPOT U.S.A., INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Court No. 20-01177 |
| | : | |
| UNITED STATES OF AMERICA; OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE; U.S. CUSTOMS & BORDER PROTECTION, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Home Depot U.S.A., Inc. ("THD"), by and through its attorneys, allege and state as follows:

1. The instant action concerns the unlawful expansion of the scope of Section 301 of the Tariff Act of 1974 by imposing tariffs on imports from the People's Republic of China included on what has commonly been referred to as List 3 (accounting for an approximate trade value of $200 billion) and List 4A (accounting for an approximate trade value of $300 billion). *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018) (publishing List 3); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019) (publishing List 4A). Neither the Trade Act of 1974 ("Trade Act") nor the Administrative Procedure Act ("APA") authorizes the imposition of import duties beyond the

remedial purpose provided by statute. The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund, with interest, all Section 301 duties paid by Plaintiff for all imports of products covered by List 3 and List 4A.

## JURISDICTION

2.  The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(2).

## PARTIES

3.  THD is a home improvement retailer that offers products for the Do-It-Yourself ("DIY") customer and professional contractors, offering more than a million products used in a broad range of DIY and professional construction projects, and offering an installation business for the Do-It-For-Me customer. THD employs more than 400,000 associates and operates almost 2,000 stores in the U.S. Plaintiff is the importer of record of many products imported subject to List 3 and List 4A. By way of example, Plaintiff has made numerous entries of bamboo flooring under HTSUS subheading 4418734000, which is subject to *ad valorem* duties under List 3 and cordless drills and drivers under HTSUS subheading 8467290040, which is subject to additional *ad valorem* duties under List 4A.

4.  Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(2).

5.  The Office of the United States Trade Representative ("USTR") is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President. USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

6. Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects duties on imports. CBP collected payments made by Plaintiff to account for the tariffs imposed by USTR under List 3 and List 4A.

## STANDING

7. THD has standing to sue because it is "adversely affected or aggrieved by agency action within the meaning of" the APA. 5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i). Tariffs imposed by Defendants pursuant to Lists 3 and 4A adversely affected and aggrieved THD because they were required to pay these impermissible duties.

## TIMELINESS OF THE ACTION

8. A plaintiff must commence an action under 28 U.S.C. § 1581(i)(2) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i).

9. The instant action contests two actions taken by Defendants, which resulted in the imposition of List 3 and List 4A. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304, 43,306-29 (Aug. 20, 2019). As to the action resulting in List 3, Plaintiff's claims accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register*. 83 Fed. Reg. 47,974. As to the action resulting in List 4A, Plaintiff's claims accrued at the earliest on August 20, 2019, when USTR published notice of List 4A in the *Federal Register*. 84 Fed. Reg. 43,304. Plaintiff has therefore timely filed this action.

**RELEVANT LAW**

10. Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices. 19 U.S.C. § 2411(b). If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice. *Id.* § 2411(b), (c)(1)(B).

11. Section 307 of the Trade Act allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act under certain circumstances, such as when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate." *Id.* § 2417(a)(1)(B), (C).

**PROCEDURAL HISTORY**

I.   **USTR's Investigation**

12. On August 14, 2017, the USTR was directed to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).

13. On August 18, 2017, USTR initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under [Section 301(b) of] the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

14. On March 22, 2018, USTR announced the results of its investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018) ("Section 301 Report"), *available at* https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF. USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17. USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. companies to Chinese companies on terms that favor Chinese recipients, *id.* at 55; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171. In its report, USTR did not quantify the burden or restriction imposed on U.S. commerce by the practices subject of the investigation.

15. On March 22, 2018, USTR published a "Fact Sheet" that China's policies result in harm to the U.S. economy of at least $50 billion per year. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Section 301 Fact Sheet* (Mar. 22, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/Section-301-fact-sheet. USTR proposed additional tariffs of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies.

*See Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018).

**II.     Lists 1 & 2**

16.     On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of estimated annual trade value for calendar year 2018." *Id.* at 14,907.  USTR explained that it chose $50 billion because that amount was "commensurate with an economic analysis of the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as covered by USTR's Section 301 investigation."  OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese Products* (Apr. 3, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/april/under-section-301-action-ustr.

17.     On June 20, 2018, USTR published notice of its final list of products subject to an additional duty of 25% *ad valorem*, a list commonly known as "List 1." *Notice of Action and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).

USTR announced that it intended to impose a 25% *ad valorem* duty on a second

proposed list of Chinese products in order to "maintain the effectiveness of [the] $50 billion trade action" grounded in its Section 301 investigation. *Id.* USTR announced a proposed "List 2" covering 284 tariff subheadings with "an approximate annual trade value of $16 billion." *Id.* at 28,711-12. Such list was published on August 16, 2018, USTR. *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823 (Aug. 16, 2018).

### III.  List 3

18. Beginning in March 2018, Defendants expanded the scope of the tariffs imposed under Section 301 of the Trade Act to cover imports of Chinese origin worth more than $500 billion. Defendants did so for reasons unrelated to the unfair practices that USTR had investigated within the Section 301 investigation.

19. On June 18, 2018, the USTR was directed to consider whether the United States should impose additional duties on products from China with an estimated trade value of $200 billion, despite USTR having not yet implemented List 1 and List 2.

20. USTR stated that it would implement the proposed duties on $200 billion in goods from China to address China's threatened retaliatory measures, rather than any of the harms identified in its Section 301 investigation. OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, *USTR Robert Lighthizer Statement on the President's Additional China Trade Action* (June 18, 2018), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/june/ustr-robert-lighthizer-statement-0.

21. On July 17, 2018, USTR published notice of its proposal to "modify the action in this investigation by maintaining the original $34 billion action and the proposed $16 billion action, and by taking a further, supplemental action" in the form of "an additional 10 percent *ad*

*valorem* duty on [a list of] products [from] China with an annual trade value of approximately $200 billion." *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018). USTR invoked Section 307(a)(1)(C) of the Trade Act. The deadline for initial written comments on this action was August 17, 2018, and a hearing was scheduled for August 20-23, 2018 with post-hearing rebuttal comments due August 30, 2018. *Id*. at 33,608.

22. USTR confirmed that it had relied on China's decision to "retaliatory duties" as the primary basis for its proposed action. *Id*. at 33,609. USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices related to technology transfer, intellectual property, and innovation that USTR had investigated nor did USTR suggest the additional trade value represented by List 3 and List 4A tariffs was commensurate with the specific harm caused to the United States subject of the Section 301 investigation. *See id.*

23. USTR's contemporaneous press statements corroborated the contents of its notice that China's retaliatory duties motivated its proposed action, without mention of the necessity for such additional tariffs to remedy harm identified in the Section 301 investigation.

24. USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018 as the new deadline for both initial and rebuttal comments from the public. *Id.* at 38,761. USTR also restricted each hearing participant to five minutes. *Id.* Approximately 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments. List 3 Docket, https://www.regulations.gov/docket?D= USTR-2018-0026.

25. USTR moved forward with its proposed supplemental action and published notice of another list of products subject to an additional duty, a list commonly known as "List 3." 83

Fed. Reg. 47,974. USTR initially imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019. *Id.* at 47,975. USTR determined that the additional duty would apply to all List 3 products that enter the United States from China on or after September 24, 2018. *Id.* USTR did not respond to any of the over 6,000 comments that it received nor did it address any of the testimony provided by roughly 350 witnesses pursuant to the hearing and comment period on this action. *Id.*

26. USTR cited Section 307(a)(1)(B) of the Trade Act as justification for this supplemental action. *Id.* at 47,974. USTR stated that the relevant burden continues to increase, and that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.* USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China." *Id.*

27. In June 2019, USTR invited the public to seek exclusions from List 3 duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019). USTR's request for comments for exclusions from List 3 tariffs stated that any "exclusion will be effective starting from the September 24, 2018, the effective date of the September 2018 action, and extending for one year after the publication of the exclusion determination." *Id.*

28. USTR amended the duration of its List 3 exclusions to be valid only until August 7, 2020 on the basis that adhering to a one-year exclusion would create disparities between exclusions granted at different times. *Notice of Product Exclusions, Amendment to the Exclusion Process, and Technical Amendments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 84 Fed. Reg. 49,541 (Sept. 20, 2019).

29. USTR received in excess of 30,000 requests for exclusion from List 3 tariffs and published its decisions through a series of notices from August 7, 2019 to June 19, 2020. Over 28,000 of these requests were denied.

30. Plaintiff THD filed numerous requests seeking exclusion of various products from the List 3 tariffs which were denied. By way of example, on May 4, 2020, THD received notice from USTR that its request for tariff exclusion for bamboo flooring under HTSUS 4418734000 was denied "because the request failed to show that the imposition of additional duties on the particular product would cause severe economic harm to you or other U.S. interests."

31. In May and June, 2020, USTR published its procedure for parties to request renewals of exclusion requests previously granted under List 3. *Requests for Comments Concerning the Extension of Particular Exclusions Granted Under the $200 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 27,011 (May 6, 2020); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $200 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 34,279 (June 3, 2020). USTR indicated that it would "evaluate the possible extension of each request on a case-by-case basis." *Id*.

32. On August 11, 2020, USTR published its notice granting particular exclusion extensions under List 3. *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 48,600 (Aug. 11, 2020). No justification was provided for why certain exclusion renewal requests were denied. Plaintiff THD filed numerous requests seeking exclusion extensions under List 3, some of which were denied. By way of example, on August 6, 2020, Plaintiff received notice that its request to extend exclusion 20(ll)(41) for pressure washers (described in statistical reporting number 8424.30.9000) was denied. No justification was provided for the denial.

33. The duties imposed on products covered by List 3 remain in effect as of the date of this complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 3 duties.

**IV.    List 4A**

34. On May 17, 2019, USTR announced its intent to proceed with List 4 covering a wide range of products subject to additional tariffs. Under USTR's proposal, List 4 would impose an additional duty of 25% *ad valorem* on products worth an estimated trade value of $300 billion. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019). USTR explained that its decision was motivated by China's "retreat[] from specific commitments made in previous [negotiating] rounds [and] announce[ment of] further retaliatory action against U.S. commerce." *Id.*

35. Similar to the process it followed for List 3, USTR invited the public to comment on the proposed List 4 and participate in a hearing. *Id.* The public submitted nearly 3,000 comments. List 4 Docket, https://beta.regulations.gov/document/USTR-2019-0004-0001. USTR

required witnesses to submit drafts of their testimony by June 13, 2019, some four days before the deadline for fully developed written comments, and limited witnesses to five minutes of testimony at the hearing.

36. On August 20, 2019, USTR issued a final notice adopting List 4 splitting the list of impacted products into two tranches, commonly referred to as List 4A and List 4B. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019). List 4A would impose a 10% *ad valorem* duty on goods worth roughly $112 billion, effective September 1, 2019. *Id.* List 4B would impose a 10% *ad valorem* duty on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019. *Id.* Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to state that its determination "takes account of the public comments and the testimony." *Id.* at 43,305.

37. As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that provision allows it to modify its prior action taken pursuant to Section 301 of the Trade Act. No increased burden was identified.

38. In October 2019, USTR invited the public to seek exclusions from List 4A duties on a product-specific basis. *Procedures for Requests to Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (October 24, 2019).

39. USTR received in excess of 8,700 requests for exclusion from List 4A tariffs and published its decisions through a series of notices from March 10, 2020 to August 5, 2020. Over 8,200 of those requests were denied.

40. Plaintiff THD filed numerous requests seeking exclusion of various products from the List 4A tariffs which were denied. By way of example, on June 9, 2020, Plaintiff received notice from USTR that its tariff exclusion request for cordless drills and drivers under HTSUS 8467290040 was denied because "the request failed to show that the imposition of additional duties on the particular product would cause severe economic harm to you or other U.S. interests." *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144 (October 24, 2019), Docket No. USTR-2019-0017-44558.

41. From June through August, 2020, USTR published its procedure for parties to request renewals of exclusion requests previously granted under List 4A. *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 38,482 (June 26, 2020); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 43,639 (July 17, 2020); *Request for Comments Concerning the Extension of Particular Exclusions Granted Under the $300 Billion Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation,* 85 Fed. Reg. 48,595 (Aug. 11, 2020). USTR indicated that it would "evaluate the possible extension of each request on a case-by-case basis." *Id*.

42. On September 2, 2020 USTR published its notice granting particular exclusion extensions under List 4A. *Notice of Product Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation,* 85 Fed. Reg. 54,616 (Sept. 2, 2020). No justification was provided for why certain exclusion renewal requests were denied. Plaintiff THD filed numerous requests seeking exclusion extensions under List 4A, some of which were denied. By way of example, on August 28, 2020 Plaintiff received notice that its request to extend exclusion 20(hhh)(4) for locking tip tie fasteners of plastics (described in statistical reporting number 3926.90.9990 prior to July 1, 2020; described in statistical reporting number 3926.90.9985 effective July 1, 2020) was denied. No justification was provided for the denial.

43. The duties imposed on products covered by List 4A remain in effect as of the date of this complaint, with the exception of the limited number of products for which USTR extended its originally granted exclusions from the List 4A duties

## STATEMENT OF CLAIMS

### COUNT ONE

### (VIOLATION OF THE TRADE ACT OF 1974)

44. Paragraphs 1 through 43 are incorporated by reference.

45. The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

46. Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory

and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its actions giving rise to List 3 and List 4A on any such determination.

47. If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action to take, if any," within "12 months after the date on which the investigation is initiated." 19 U.S.C. § 2414(a)(1)(B), (2)(B). USTR's actions giving rise to List 3 and List 4A occurred in September 2018 and August 2019, respectively, well over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017.

48. Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act when the burden or restriction imposed on U.S. commerce by the investigated foreign country's unfair acts, policies, or practices increases or decreases. 19 U.S.C. § 2417(a)(1)(B). Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs imposed pursuant to an investigation conducted pursuant to Section 301 of the Trade Act for reasons unrelated to the acts, policies, or practices that USTR investigated. Congress did not provide authorization to USTR to expand its focused investigatory findings.

49. Section 307 also authorizes USTR to "modify or terminate" an action under Section 301(b) if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C). Section 307 of the Trade Act, however, does not provide Defendants with the authority to *increase* tariff actions that are no longer "appropriate," but rather only to delay, taper, or terminate such actions.

50. Plaintiff is therefore entitled to a holding that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

## COUNT TWO

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

51. Paragraphs 1 through 50 are incorporated by reference

52. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

53. Defendants' exceeded their statutory authority in promulgating List 3 and List 4A and therefore acted unlawfully when publishing and collecting duties on imports of products on List 3 and List 4A.

54. Defendants also promulgated List 3 and List 4A in an arbitrary and capricious manner because they did not provide a sufficient opportunity for comment, failed to meaningfully consider relevant factors when making their decisions, and failed to adequately explain their rationale. Defendants' arbitrary decision-making resulted in the unlawful imposition of tariffs on imports covered by List 3 and List 4A whose value exceeds $500 billion.

## COUNT THREE

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

55. Paragraphs 1 through 54 are incorporated by reference.

56. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory

jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

57. Defendants issued tariff exclusion denials for Lists 3 and 4A predicated on the basis that Plaintiff "failed to show that the imposition of additional duties on the particular product would cause severe economic harm to you or other U.S. interests."

58. Because Defendants failed to adequately explain their rationale behind the denials, and identify the facts on which it based its conclusion that the denials should be issued, the action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and must be set aside under 5 U.S.C. § 706(2)(A).

## COUNT FOUR

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

59. Paragraphs 1 through 58 are incorporated by reference.

60. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

61. On August 11, 2020, USTR published a list of List 3 exclusion renewals that were granted, the majority of which were denied.

62. On September 2, 2020 USTR published a list of List 4A exclusion renewals that were granted, the majority of which were denied.

63. USTR failed to provide any justification or explanation for why certain exclusion renewal requests were denied.

64. Because Defendants failed to adequately explain their rationale behind the denials, and identify the facts on which it based its conclusion that the denials should be issued, the action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and must be set aside under 5 U.S.C. § 706(2)(A).

## COUNT FIVE

### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

65. Paragraphs 1 through 64 are incorporated by reference.

66. The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; [or] (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

67. In its June 24, 2019 request for comments for exclusions from List 3 tariffs, USTR stated that any exclusion would extend for one year after publication of the exclusion determination.  USTR later modified the duration of its exclusions on September 20, 2019, stating that any granted exclusions would be valid only until August 7, 2019 on the basis that adhering to one-year exclusions would create disparities between exclusions granted at different times.

68. Because Defendants failed to adequately explain their rationale behind the premature termination of List 3 exclusions, and identify the facts on which it based its conclusion that a consistent exclusion period was required across all granted exclusions, the action is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law, and must be set aside under 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully request that this Court

(1)     hold that Defendants' actions resulting in tariffs on products covered by List 3 and List 4A are unauthorized by, and contrary to, the laws of the United States;

(2)     order Defendants to refund, with interest, any duties paid by Plaintiff pursuant to List 3 and List 4A;

(3)     award Plaintiff their costs and reasonable attorney fees; and

(4)     grant such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Daniel Cannistra

_____
Daniel Cannistra

Dated: September 18, 2020

CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, D.C. 20004

*Counsel to Home Depot U.S.A., Inc.*

## CERTIFICATE OF SERVICE

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on September 18, 2020, copies of the foregoing Summons and Complaint were served on the following parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

_____
Daniel Cannistra